*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
CRISFIELD, HITESMAN, and GASTON,
Appellate Military Judges

_____

**UNITED STATES**
Appellee

**v.**

**Joshua P. Hill**
Lance Corporal (E-3), U.S. Marine Corps
Appellant

**No. 201800161**

Decided: 18 October 2019.

Appeal from the United States Navy-Marine Corps Trial Judiciary. Military Judges: Lieutenant Colonel Mark P. Sameit, USMC (arraignment and motions); Major John Ferriter, USMC (motions and trial). Sentence adjudged 2 February 2018 by a general court-martial convened at Marine Corps Base Camp Pendleton, California, consisting of a military judge sitting alone. Sentence approved by convening authority: forfeiture of all pay and allowances, reduction to pay grade E-1, confinement for two years, and a dishonorable discharge.

For Appellant: Captain Nicholas S. Mote, USMC.

For Appellee: Lieutenant Jonathan Todd, JAGC, USN; Captain Brian L. Farrell, USMC.

Chief Judge CRISFIELD delivered the opinion of the Court, in which Senior Judge HITESMAN and Judge GASTON joined.

_____

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

_____

CRISFIELD, Chief Judge:

Appellant was found guilty by a military judge, pursuant to his pleas, of one specification of abusive sexual contact in violation of Article 120(d), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920(d) (2016). He was found guilty by the military judge, contrary to his pleas, of one specification of sexual assault, one specification of abusive sexual contact, and one specification of indecent visual recording, in violation of Articles 120(b), 120(d), and 120c(a), UCMJ, 10 U.S.C. §§ 920(b), 920(d), and 920c(a), respectively.

Appellant asserts four assignments of error: (1) Specification 1 of Charge III, alleging sexual assault by causing bodily harm, fails to state an offense because it does not specifically describe the bodily harm alleged; (2) Appellant did not receive effective assistance of counsel because his defense counsel failed to object to the lack of specificity in Specification 1 of Charge III; (3) this Court cannot conduct an adequate factual sufficiency review of Appellant's conviction of Specification 1 of Charge III due to the lack of specificity and the fact that the military judge found Appellant not guilty of certain acts alleged in another specification; and (4) the promulgating order is deficient since it fails to reflect all the charges and specifications on which he was arraigned and fails to reflect the consolidation of Specifications 3 and 4 of Charge III. We find no error prejudicial to the rights of Appellant but agree that the promulgating order contains errors that must be corrected.

## I. BACKGROUND

On 3 December 2016, Appellant attended a party with other Marines at his barracks at Marine Corps Base Camp Pendleton, California. One of the attendees at the party was a civilian female, B.J.M. She had been brought to the barracks by Lance Corporal (LCpl) Price, whom she had recently met on Tinder, a dating app. Appellant, LCpl Price, B.J.M., and some other Marines gathered in LCpl Price's barracks room and consumed alcohol. B.J.M. and LCpl Price soon became intoxicated. At some point in the evening, everyone except B.J.M. and LCpl Price left the room to attend a party in another room. Once alone, LCpl Price and B.J.M. had sexual intercourse on his bed. They both fell asleep. LCpl Price woke shortly afterwards, left B.J.M. asleep in his room, and went to the other party where he bragged about having sex with her.

LCpl Price became obnoxious at the other party, so his roommate, LCpl Halerz, escorted him out of the party and back to their room. When they entered the room, they found Appellant standing next to B.J.M., who was naked, lying on the bed, and convulsing.[1] After B.J.M. stopped convulsing, Appellant and other Marines dressed her, got her into a car, and drove her back to her apartment.

The next day, 4 December 2016, B.J.M., believing that she had been sexually assaulted in the barracks, went to a hospital and underwent a sexual assault forensic examination. She also made a statement to the Naval Criminal Investigative Service (NCIS) about the events.

Agents of NCIS interviewed Appellant later that day. He confessed to inserting his finger into B.J.M.'s vulva and touching her breast with his hand. He also confessed to taking pictures of B.J.M. without her consent while she was naked on the bed. While still in the interrogation room, Appellant called his father and informed him that he had "fingered" a young woman while she was passed out.[2] Appellant then went to a hospital to undergo a forensic examination. A test revealed that Appellant's finger had B.J.M.'s DNA on it.

Appellant pleaded guilty by exceptions to Specification 4 of Charge III,[3] abusive sexual contact by touching B.J.M.'s breast with his hand with an intent to gratify his own sexual desire when he knew or reasonably should have known that the victim was asleep, unconscious, and otherwise unaware that the sexual contact was occurring. He pleaded not guilty to the remaining language, charges, and specifications. The Government proceeded to trial on the remaining language, charges, and specifications.

At trial, B.J.M. testified that while she was lying on the bed naked with the lights off, she was briefly awakened by a flash, as from a camera phone. She next remembered waking up find someone at the foot of the bed inserting his finger into her vagina. She testified that the person who did it looked similar to Appellant. She later awoke to discover that someone was touching her breasts. She testified that she did not consent to any of those acts.

At the conclusion of the trial on the merits the military judge acquitted Appellant of making a false official statement (Charge II); breaking and

---

[1] Ms. B.J.M. testified to having a history of seizures after consuming alcohol. Record at 312-13.

[2] Prosecution Exhibit 12 at 48-49.

[3] The Appellant excepted the following language from his guilty plea: "touching the breast of B.J.M. with his tongue and touching the neck of B.J.M. with his mouth."

entering into the room where B.J.M. was asleep (Charge V); and sexual assault by digitally penetrating B.J.M. when he knew or reasonably should have known that she was asleep, unconscious, and otherwise unaware that the sexual act was occurring (Specification 2 of Charge III).

The military judge found Appellant guilty of sexual assault by digitally penetrating B.J.M.'s vulva by causing bodily harm (Specification 1 of Charge III); abusive sexual contact by touching her breasts with his mouth by causing bodily harm (Specification 3 of Charge III);[4] and indecent visual recording (Charge IV). He also found Appellant guilty of some language that was excepted from Specification 4 of Charge III when Appellant pleaded guilty to that specification before trial on the merits.[5]

The military judge found that Specifications 3 and 4 of Charge III constituted an unreasonable multiplication of charges and consolidated them for the purposes of findings.

Additional facts necessary to resolution of the issues are contained in the discussion.

## II. DISCUSSION

### A. Specification 1 of Charge III States an Offense

For the first time on appeal Appellant asserts that Specification 1 of Charge III fails to state an offense because its description of the bodily harm as "an offensive touching" is too general.

"The military is a notice pleading jurisdiction." *United States v. Fosler,* 70 M.J. 225, 229 (C.A.A.F. 2011) (citation omitted). Encompassing the notice requirement, the rules of procedure provide that, "[a] specification is a plain, concise, and definite statement of the essential facts constituting the offense charged. A specification is sufficient if it alleges every element of the charged

---

[4] The military judge excepted the words "touching the breast of B.J.M. with his tongue, and touching the neck of B.J.M. with his mouth," and substituted the words, "and touching the breasts of B.J.M. with his mouth." Record at 570-71.

[5] The military judge excepted the words "touching the breast of B.J.M. with his tongue, and touching the neck of B.J.M. with his mouth" and substituted the words, "and touching the breasts of B.J.M. with his mouth." He also excepted the words "or reasonably should have known" and substituted "and reasonably should have known." Finally, he excepted the words "unconscious, and otherwise unaware that the sexual contact was occurring" and substituted the words "and unconscious." Record at 571.

offense expressly or by necessary implication . . . ." RULE FOR COURTS-MARTIAL (R.C.M.) 307(c)(3), MANUAL FOR COURTS-MARTIAL (MCM), UNITED STATES (2016 ed.). A specification is sufficient if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend" and "enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States,* 418 U.S. 87, 117 (1974).

The Government argues that Appellant waived his claim that the specification fails to state an offense because he did not raise the issue at trial. We review whether an accused has waived an issue *de novo. United States v. Ahern,* 76 M.J. 194, 197 (C.A.A.F. 2017). Waiver is the "intentional relinquishment or abandonment of a known right," whereas "forfeiture is the failure to make the timely assertion of a right." *United States v. Gladue,* 67 M.J. 311, 313 (C.A.A.F. 2009) (internal quotation marks and citations omitted). Failure to state an offense is a waivable ground for dismissal of a specification that the rules contemplate will be brought and decided "before the final adjournment of the court-martial." R.C.M. 907(b)(2)(E). However, while failure to raise other non-jurisdictional motions before adjournment "shall constitute waiver," a motion to dismiss for failure to state an offense is specifically excluded from such automatic waiver. R.C.M. 905(e). As we do not find evidence in the record that Appellant intentionally relinquished this known right, we will consider Appellant's failure to raise this issue at trial as forfeiture and apply plain error review. *See United States v. Ballan,* 71 M.J. 28, 34 (C.A.A.F. 2012) (explaining that "error alone does not warrant dismissal" and that charges that fail to allege an element of an offense, if not objected to at trial, are tested for plain error).

When a challenge to a specification as defective is raised for the first time on appeal, Appellant has the "burden of demonstrating that: (1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right," specifically, his right to notice. *United States v. Humphries,* 71 M.J. 209, 214-15 (C.A.A.F. 2012) (internal quotation marks and citations omitted). Thus, "in the plain error context [a] defective specification alone is insufficient to constitute substantial prejudice to a material right." *Id.* at 215.

For the specification at issue here, we find neither error nor prejudice to the right of notice to Appellant, who made no motion at trial to dismiss the specification or to compel the Government to produce a bill of particulars. Appellant first complains that the specification fails to plead essential words of criminality. We find that the phrase "offensive touching" in the context of a specification alleging that Appellant penetrated B.J.M.'s vulva with his finger is sufficient to allege criminality. It serves to notify an accused that his acts, which under other circumstances might be lawful, constitute criminal acts

under the circumstances. "Offensive touching" clearly signals criminality in such a specification, much as "wrongfully," "unlawfully," or "without authority" would do in other contexts. *See generally* R.C.M. 307(c)(3), Discussion (G)(ii).

Appellant also asserts that the specification fails to state an offense because it fails to expressly or impliedly allege all the elements of the offense as required by R.C.M. 307(c)(3). The statutory elements of sexual assault involving penetration of the vulva by any part of the body by causing bodily harm are: (1) the accused committed a sexual act upon another person by causing penetration, however slight, of the vulva by any part of the body; (2) that the accused did so by causing bodily harm to that person; and (3) that the accused did so with an intent to arouse or gratify the sexual desire of any person. 10 U.S.C. § 920(b)(1)(B). Specification 1 of Charge III alleges each of those statutory elements. While the specification's description of the bodily harm is general and could provide more specific notice of the specific bodily harm alleged, such an issue is appropriately addressed as necessary through a bill of particulars, not dismissal. *See* R.C.M. 906(b)(6).

Appellant also claims that the specification does not provide adequate notice of the charge, and does not provide adequate double jeopardy protections. Based on the evidence presented at the court-martial and the closing arguments of counsel, it is clear to us, as it was before the court below, that the bodily harm and offensive touching involved in the specification was Appellant's nonconsensual penetration of the victim's vulva with his finger. The UCMJ specifically contemplates such a theory of criminal liability and it is common in charging this type of offense. Article 120(g)(3), UCMJ, 10 U.S.C. § 920(g)(3) (2016) ("The term 'bodily harm' means any offensive touching . . . including any nonconsensual act or nonconsensual sexual contact."). The evidence clearly supported and substantiated that theory in this case. Based on the record before us, Appellant's claim of a defective specification that deprived him of adequate notice is without merit.

**B. The Appellant Received Effective Assistance of Counsel**

Appellant claims that he did not receive effective assistance of counsel because his trial defense counsel did not move to dismiss Specification 1 of Charge III for failure to state an offense and did not request a bill of particulars.

We review claims of ineffective assistance of counsel de novo. *United States v. Harpole,* 77 M.J. 231, 236 (C.A.A.F. 2018). In order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this defi-

ciency resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

With respect to *Strickland's* first prong, counsel are presumed to be competent and our inquiry into an attorney's representation is "highly deferential[.]" *Id.* at 689. We employ "a strong presumption that counsel's conduct falls within the wide range of professionally competent assistance." *Id.* Appellant has the heavy burden of establishing a factual foundation for a claim of ineffective representation. *See United States v. Grigoruk*, 52 M.J. 312, 315 (C.A.A.F. 2000) ("sweeping, generalized accusations" will not satisfy an appellant's foundational burden). In order to show prejudice under *Strickland*, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694. "Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696.

We will not second-guess strategic or tactical decisions made by the trial defense counsel unless Appellant can show specific defects in counsel's performance that were unreasonable under prevailing professional norms. *United States v. Mazza*, 67 M.J. 470, 475 (C.A.A.F. 2009). We do not believe that Appellant has shown any here. Based on our finding that Specification 1 of Charge III does not fail to state an offense, we conclude that any motion to dismiss on that basis would not have prevailed and at most would have resulted in the production of a bill of particulars that the trial defense counsel did not appear to need.

## C. This Court Can Conduct a Factual Sufficiency Review of Specification 1 of Charge III

Appellant asserts that this Court cannot conduct a factual sufficiency review of Specification 1 of Charge III because the "offensive touching" is not specifically described and the military judge found Appellant not guilty of two acts that could have constituted such offensive touching. He argues that this Court cannot find that the "offensive touching" alleged in Specification 1 of Charge III is touching B.J.M.'s breast with his tongue or her neck with his mouth because the military judge, in his announcement of findings, specifically excepted that language from Specifications 3 and 4 of Charge III. We agree with Appellant on this point, but neither of those acts constitute the offensive touching that we find was proven in Specification 1.

Notwithstanding the failure to specifically describe the bodily harm by which Appellant caused the sexual act alleged in Specification 1 of Charge

III, we feel confident in our ability to conduct a factual sufficiency review of Appellant's convictions.

From the evidence adduced at trial and the closing arguments to the military judge, it is obvious to us that the bodily harm involved in Specification 1 was the nonconsensual sexual act itself: Appellant's penetration of B.J.M.'s vulva with his finger. B.J.M. did not consent to the sexual act and we need not search any further for bodily harm.

The test for factual sufficiency is whether "after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [this court is] convinced of Appellant's guilt beyond a reasonable doubt." *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017) (citation, internal quotation marks, and emphasis omitted). In conducting this unique appellate function, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). Proof beyond a reasonable doubt does not mean, however, that the evidence must be free from conflict. *United States v. Goode*, 54 M.J. 836, 841 (N-M. Ct. Crim. App. 2001). Having carefully considered the evidence in the record of trial and making suitable allowances for not having personally observed the witnesses, we are convinced of Appellant's guilt beyond a reasonable doubt.

## D. The Promulgating Order Contains errors

Appellant correctly notes that the convening authority's action contains two errors. It fails to reflect that Appellant was arraigned on Charge I, which was subsequently withdrawn before Appellant entered pleas. It also fails to reflect that the military judge consolidated Specifications 3 and 4 of Charge III for findings.[6] We find no prejudice to Appellant in these errors, but he is entitled to accurate post-trial documents. *United States v. Crumpley*, 49 M.J. 538, 539 (N-M. Ct. Crim. App. 1998). We order correction to the promulgating order in our decretal paragraph.

---

[6] We also note that the Staff Judge Advocate's Recommendation includes an incomplete copy of the Results of Trial report and thus fails to properly advise the convening authority of the court-martial's findings. However, based on the correctly stated portions of the promulgating order and the record as a whole, we find no prejudice to Appellant in this error.

### III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the approved findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred. Arts. 59 and 66, UCMJ. Accordingly, the findings and sentence as approved by the convening authority are **AFFIRMED**. The supplemental court-martial order will correctly indicate Appellant's arraignment on Charge I and the consolidation of Specifications 3 and 4 of Charge III into the following specification for findings:

> In that Lance Corporal Joshua P. Hill, U.S. Marine Corps, on active duty, did, at or near Marine Corps Base Camp Pendleton, California, on or about 3 December 2016, touch directly B.J.M., to wit: touching the breast of B.J.M. with his hand and mouth:
>
> - by causing bodily harm to B.J.M., to wit: an offensive touching, however slight, and
>
> - when he knew and reasonably should have known that B.J.M. was asleep and unconscious,
>
> with an intent to gratify the sexual desire of the said Lance Corporal Hill.

Senior Judge HITESMAN and Judge GASTON concur. .

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court